FILED

2015 Jul-31  PM 02:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

| | |
|---|---|
| **TERESA GRIER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 6:14-CV-1403-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Teresa A. Grier ("Ms. Grier") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration, which denied her application for Supplemental Security Income ("SSI") benefits.[1] Ms. Grier timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Grier was 45 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (Tr. 161). Ms. Grier testified that she had a ninth (9th) grade special education. (Tr. 32). Her past relevant work experience includes employment as a painter. (Tr. 21). Ms. Grier stated she stopped working on December 31, 2002, and claims she became disabled on that date.[2] (Tr. 140, 166).

On May 24, 2011, Ms. Grier protectively filed a Title XVI application for SSI.[3] (Tr. 55). On October 5, 2011, the Commissioner initially denied this claim. (Tr. 74). Ms. Grier timely filed a written request for a hearing on October 24, 2011. (Tr. 80). On February 1, 2012, a fully favorable decision of Ms. Grier's application was reached by an attorney advisor.[4] (Tr. 56). On March 29, 2012, the Appeals Council

---

[2]On Ms. Grier's disability report she listed several conditions that affected her ability to work including: fibromyalgia, bipolar, diabetes, fatty liver disease, asthma, arthritis, tendonitis, ADD, high blood pressure, anxiety, depression, acid reflux, restless leg syndrome, muscle deterioriation, muscle spasms, learning disability. (Tr. 166). The court notes that Disability Determination Service ("DDS") identified organic mental disorders as Ms. Grier's primary diagnosis, and disorders of back (discogenic and degenerative) as her secondary diagnosis. (Tr. 55).

[3]The court notes that nearly every document states the application date as being May 24, 2011; however, the exhibit labeled "Application for Supplemental Security Income Benefits" states that Ms. Grier applied on June 1, 2011. (Tr. 140).

[4]The prehearing proceeding was conducted pursuant to 20 C.F.R. § 416.1442(a):

> After a hearing is requested but before it is held, an attorney advisor may conduct prehearing proceedings as set out in paragraph (c) of this section. If after the completion of these proceedings [the commissioner] can make a decision that is fully favorable to [the claimant] and all other parties based on the preponderance of the

sent notice to Ms. Grier of its intention to review the decision reached by the attorney advisor based on its own motion pursuant to 20 C.F.R. § 416.1469. (Tr. 96). On October 17, 2012, the Appeals Council informed Ms. Grier that the previously favorable decision had been vacated and her case had been remanded to an ALJ for further proceedings. (Tr. 67). The ALJ conducted a hearing on the matter on July 7, 2013. (Tr. 30). On October 21, 2013, the ALJ issued his opinion concluding Ms. Grier was not disabled and denied benefits. (Tr. 22). On May 20, 2014, the Appeals Council issued a denial of review on her claim. (Tr. 1).

Ms. Grier filed a complaint with this court on July 22, 2014, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on November 13, 2014. (Doc. 8). Ms. Grier filed a supporting brief (Doc. 12) on January 26, 2015, and the Commissioner responded with its own (Doc. 13) on February 27, 2015. With the parties having fully briefed the matter, the court has carefully considered the record and, for the reasons stated below, reverses and remands the decision of the ALJ.[5]

---

> evidence, an attorney advisor, instead of an administrative law judge, may issue the decision.

[5]In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB"). However, separate, parallel statutes and regulations exist for SSI and DIB claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.* Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[6] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

---

[6]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of June 26, 2014.

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.     The claimant has not engaged in substantial gainful activity since May 24, 2011, the application date. (20 C.F.R. § 416.971 *et seq*). (Tr. 12).

2.     The claimant has the following severe impairments: obesity, fibromyalgia, diabetes (non-insulin dependent Type II), nicotine dependent with episodes of bronchitis, mild degenerative disk disease of the spine, sleep apnea, and depression. The claimant's rectal polyp was successfully removed without any complications and is, therefore, considered by the undersigned to be a non-severe impairment. (20 C.F.R. § 416.920(c)). (Tr. 12).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (Tr. 13).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work defined in 20 C.F.R. § 416.967(b). The claimant can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Claimant can stand and/or walk, with normal breaks, for a total of 6 hours in an 8-hour workday and sit, with normal breaks, for a total of 6 hours in an 8-hour workday. Pushing and/or pulling of foot controls with the left lower extremity is limited to occasionally, with the total restriction of climbing ladders, ropes, or scaffolds and also crawling. Balancing, stooping, kneeling, and crouching would be occasional. She should avoid concentrated exposure to cold, heat, humidity, vibration, fumes, odors, dust, gases, and poor ventilation. The claimant should not work at unprotected heights or around dangerous moving unguarded machinery. The claimant is limited to performing unskilled work with no more than occasional interaction with supervisors, coworkers, and the general public. Otherwise, she would appear to be able to perform such work for periods up to 2 consecutive hours without a standard work break. (Tr. 14).

5.      The claimant is unable to perform her past relevant work. (20 C.F.R. § 416.965). (Tr. 21).

6.      The claimant was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (20 C.F.R. § 416.963). (Tr. 21).

7.      The claimant has a limited education and is able to communicate in English. (20 C.F.R. § 416.964). (Tr. 21).

8.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the

claimant has transferable job skills. (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). (Tr. 21).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 416.969 and 416.969(a)). (Tr. 21).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since May 24, 2011, the date the application was filed. (20 C.F.R. § 416.920(g)). (Tr. 22).

## ANALYSIS

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[7] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted). Ms. Grier asserts that "the ALJ improperly discounted Grier's testimony of disabling limitations and failed to fully and fairly develop the record." (Doc. 12 at 11).

The court has carefully reviewed the record and finds that this case should be

---

[7]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

remanded for further development. Under the instant circumstances, substantial evidence does not exist in the record to support the ALJ's conclusion that Ms. Grier is not disabled and can perform reduced light work because: (1) the ALJ's negative credibility finding was not based on substantial evidence; and (2) independent of the ALJ's erroneous negative credibility finding, the ALJ's RFC determination is not supported by substantial evidence. While the court has endeavored to separate the issues into their respective subparts, it recognizes the overlap and interrelated nature of these findings.

## I.    The ALJ's Credibility Finding Is Not Based On Substantial Evidence.

Ms. Grier argues that "the ALJ did not properly assess [Ms. Grier]'s credibility consistent with the Regulations." (Doc. 12 at 4). The court agrees. More specifically, the ALJ's decision that Ms. Grier does not meet the pain standard is based on an inadequate negative credibility finding as to Ms. Grier's subjective pain testimony.

The pain standard "applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). This standard requires "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected

to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). A claimant's statements about pain or other symptoms do not alone establish disability. *See* 20 C.F.R. § 404.1529(a) ("However, statements about [the claimant's] pain or other symptoms will not alone establish that you are disabled."); *accord* 20 C.F.R. § 416.929(a) (same). Rather, "there must be medical signs and laboratory findings which show that [claimants] have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *Id.* Even if a claimant is able to show medical impairments that could reasonably be expected to produce the alleged symptoms, the Commissioner "must then evaluate the intensity, persistence of [the claimant's] symptoms so that [the Commissioner] can determine how [the claimant's] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1).

The ALJ may reject a claimant's complaints of pain if he finds them not credible. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable [sic], and that determination will be reviewed for substantial evidence."). However, if the ALJ discredits a claimant's testimony regarding the severity of her symptoms, that determination must be supported by substantial evidence. *Id.*; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (explaining that the

Commissioner's factual findings must be supported by substantial evidence).

Furthermore, the ALJ may not reject the claimant's statements as to the intensity and persistence "solely because the available objective medical evidence does not substantiate [claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* SSR 96-7p ([T]he effect the symptoms have on [the claimant's] ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").[8] Instead, the ALJ is bound to consider other evidence, in addition to the objective medical evidence, because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3).

This other evidence includes "any symptom-related functional limitations and restrictions which [the claimant], [the claimant's] treating or non-treating source, or other persons report, which can be reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" *Id.* Relevant factors that may show the effect of claimant's symptoms on her functional abilities include: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's pain;

---

[8]Although they lack the force of regulations, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *see also McCloud v. Barnhart*, 166 F. App'x 410, 416 (11th Cir. 2006), 2006 WL 177576 (citing SSR 96-6p as authoritative, for example).

any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the pain; and other treatments or measures taken by the claimant, not including medication. *Id.* Using these other factors, the ALJ must show substantial evidence supporting his attempt to discredit the claimant's pain testimony. *Id.*

In applying this standard to the present case, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 15). However, the ALJ determined "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id.* As explained *infra*, the court finds that the ALJ's reasons for discrediting the claimant's statement, while explicit, are not adequate as a matter of law.

The ALJ attempted to articulate several adequate reasons for his credibility finding adverse to Ms. Grier, including: her failure to seek additional treatment for her mental impairments; her noncompliance with treatment recommendations; silence from her treating physicians concerning whether she is disabled; his determination that Ms. Grier's treatment for her impairments has generally been routine and conservative; and her testimony regarding her daily activities cannot be objectively verified. As addressed in detail below, the court finds that the ALJ's proffered

reasons for discrediting the claimant's pain testimony are flawed and, therefore, do not satisfy the substantial evidence standard.

### A.  The ALJ improperly considered Ms. Grier's lack of treatment by a mental health professional as evidence weighing against her credibility.

The ALJ inferred from Ms. Grier's lack of treatment by a mental health professional that her statements about the negative effect of her mental impairments on her ability to work were not entirely credible.[9] After discussing evidence in the record concerning Ms. Grier's history of mental illness, the ALJ states, "the undersigned notes that the claimant has continued to fail to seek any treatment by a mental health professional and she has received her medication from her treating physicians." (Tr. 20). The court finds that the ALJ did not inquire whether Ms. Grier had any reasonable explanations for her decision not to seek treatment from a mental health professional, and ignored a significant amount of evidence which support her stated limitations attributable to her mental conditions.

SSR 96-7p provides a detailed explanation for how lack of medical treatment should be handled by an ALJ when determining a claimant's credibility, stating:

the adjudicator must not draw any inferences about an individual's

---

[9]While the ALJ's disability determination does not explicitly contain this conclusion, the hypothetical presented to the vocational expert that the ALJ relies upon in his decision indicates that he did not credit all of Ms. Grier's stated limitations stemming from her mental impairments.

symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

*Id.* In the case at hand, the ALJ's questioning of Ms. Grier to see if she had a justifiable reason for not seeking treatment for her mental impairments was inadequate.

At the hearing, the ALJ's inquiry into the status of Ms. Grier's treatment for her mental health issues consisted of the following questions:

ALJ: And you've been diagnosed with some bipolar and depression; is that correct?

Ms. Grier: Yes, sir.

ALJ: Are you seeking any kind of treatment for that, though?

Ms. Grier: Not right now.

ALJ: In what ways does your bipolar and depression affect you?

Ms. Grier: I stay in bed 90% of the time. I don't have -- I don't go anywhere unless I have to. I just mainly stay in my room and stay in bed
ALJ: And why do you stay in your room?

Ms. Grier: Because I hurt too much to get up and move around. I just

14

rather just lay in the bed and just --

(Tr. 40-41). Absent in the ALJ's inquiry is any question asking Ms. Grier why has she not sought out treatment.

Additionally, the ALJ either overlooked, or simply ignored, other credibility-related evidence in the record that supports Ms. Grier's stated limitations caused by her mental conditions. For example, according to the report produced by Dr. Bentley, Ms. Grier has a long history of psychiatric symptoms. (Tr. 294). In 1992, Ms. Grier was treated for two years at a Mental Health Center in Georgia. *Id.* Her mental condition degraded to the point that she attempted suicide on three occasions. *Id.* Ms. Grier has taken various antidepressants and benzodiazepines over the last fifteen years which she claims improves her mood on some days. *Id.* Dr. Bentley concluded that Ms. Grier's prognosis is guarded. (Tr. 296).

Moreover, Ms. Grier's sister described in a third-party function report that Ms. Grier has problems getting along with others, does not handle stress well, does not handle changes well, and that she has effectively shut everybody out. (Tr. 194-96). The ALJ did not acknowledge, much less give any reasons for rejecting the report made by Ms. Grier's sister. On remand, the ALJ should review this report and state the weight accorded and the reasons for accepting or rejecting this piece of evidence corroborating Ms. Grier's subjective limitations. *See Lucas v. Sullivan*, 918 F.2d

15

1567, 1574 (11th Cir. 1990) (reversed and remanded for further proceedings partially because the ALJ failed to review the testimony of the claimant's daughter and neighbor and did not give reasons for rejecting such testimony); *id.* ("On remand the ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence, including all testimony presented at the previous hearing or any subsequent hearings." (citing *Gibson v. Heckler*, 779 F.2d 619 (11th Cir. 1986))).

In sum, the ALJ's conclusion that Ms. Grier's stated limitations caused by her mental illnesses are incredible based upon his limited questioning during the hearing constitutes reversible error. As explained above, an ALJ may not draw any negative inferences without first considering any reasonable explanations behind a claimant's lack of treatment. *See* SSR 96-7p. Despite this legal principle, as shown through the hearing transcript, the ALJ made no attempt to ask Ms. Grier if she had a reason for not seeking treatment from a mental health professional. (Tr. 28-52). Furthermore, the ALJ did not consider and/or adequately address other evidence in the record that supports Ms. Grier's credibility regarding the limitations associated with her mental health. Therefore, the ALJ's decision to discount Ms. Grier's subjective testimony regarding her vocational limitations caused by her mental health conditions is not backed by substantial evidence.

16

**B.**     **The ALJ mischaracterized Ms. Grier's inability to quit smoking as evidence of noncompliance with treatment recommendations.**

The ALJ states in his opinion that Ms. Grier "has consistently been noncompliant with treatment recommendations" regarding her nicotine dependence, despite its negative impact on her conditions of bronchitis and her sleep apnea. (Tr. 17). Although the ALJ never explicitly states that her noncompliance is a factor he relied upon when discounting her credibility, it is implicitly apparent that the ALJ considered this to be one of the reasons for his adverse credibility determination.[10] (Tr. 15). The court finds that the ALJ improperly concluded that Ms. Grier's inability to quit smoking constituted noncompliance with treatment recommendations. Thus, this reason does not serve as substantial evidence supporting the ALJ's credibility determination.

The Commissioner may deny benefits for the failure to follow treatment when the claimant, without good reason, fails to follow a prescribed course of treatment that could restore the ability to work. *See Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990) ("The Secretary may deny SSI disability benefits if the Secretary

---

[10]The ALJ included this piece of evidence after stating his broad credibility assessment that Ms. Grier's "symptoms are not entirely credible for the reasons explained in this decision." (Tr. 15). At no point does the ALJ explicitly delineate which "reasons" did, or did not, affect his view of Ms. Grier's credibility, thus the undersigned can only presume that every reason stated was considered by the ALJ.

determines that 1) the claimant failed to follow a prescribed course of treatment, and 2) her ability to work would be restored if she had followed the treatment."); *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988) ("Secretary may deny SSI disability benefits only when a claimant, without good reason, fails to follow a prescribed course of treatment that could restore her ability to work."). While the court is unaware of any Eleventh Circuit published decision that speaks directly to the issue of noncompliance to quit smoking, there is an analogous case decided within the district that this court adopts as persuasive authority.

In *Seals v. Barnhart*, 308 F. Supp. 2d 1241, 1247 (N.D. Ala. 2004), the ALJ refused to credit the claimant's subjective complaints because the claimant continued smoking despite numerous warnings from doctors to stop. Because the claimant had failed to follow prescribed treatment to quit smoking, the ALJ found that 20 C.F.R. § 404.1530[11] precluded the claimant from being found disabled. *Id.*

In addressing the claimant's appeal in *Seals*, Judge Guin began his analysis by correcting one of his previous holdings, stating "[t]his court has previously held that 'continuing to smoke despite a physician's warning as to consequences indicates that a claimant has made a conscious lifestyle choice which is inconsistent with a finding

---

[11]"In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. § 404.1530(a)

18

of disability.'" *Id.* at 1248 (quoting *Wilda Elliot v. Apfel*, No. 5:98-CV-00820-JFG, (Doc. 8 at 2) (N.D. Ala. Nov. 18, 1998). Judge Guin determined that his prior holding "is not correct as a general statement of the law." *Id.* The court then discussed and adopted the approach utilized by the Seventh Circuit in *Shramek v. Apfel*, 226 F.3d 809 (7th Cir. 2000). *See id.*

In *Shramek*, the court found that "the ALJ erred in relying on [claimant's] inability to quit smoking as evidence of noncompliance and as a basis to find her incredible." 226 F.3d at 813. The Seventh Circuit reached this decision after noting that "the ALJ here made no finding that the prescribed treatment would restore [claimant's] ability to work, and the record would not in fact support such a finding." *Id.* Furthermore, no connection had been made between the claimant's symptoms and her smoking. *Id.*

Finally, the court commented that failure to quit smoking is not synonymous with treatment in the typical sense, stating:

> [w]e note that even if medical evidence had established a link between smoking and her symptoms, it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when she testifies that the condition is serious or painful. Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health. One does not need to look far to see persons with emphysema or lung cancer—directly caused by smoking—who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the

addictive nature of the product impacts their ability to stop. This is an unreliable basis on which to rest a credibility determination.

*Shramek*, 226 F.3d at 813.

In applying these rules set forth in *Shramek*, the court in *Seals* stated that even assuming the doctor's statements did constitute a prescribed course of treatment, "the [claimant]'s failure to stop smoking does not necessarily constitute a refusal to follow that prescribed treatment. A willful refusal to follow treatment may not be assumed from a mere failure to accomplish the recommended change." *Seals*, 308 F. Supp. 2d at 1250 (citing *McCall*, 846 F.2d at 1319) (holding that a claimant's failure to lose weight does not constitute a refusal to follow the treatment). The court found evidence in the record that the claimant had been trying to quit, and determined that "the record does not contain substantial evidence to support a finding that the plaintiff did not try to stop smoking in the present case." *Id.* at 1251.

Judge Guin also commented about how the claimant's addiction necessitates a slightly different analysis than the typical noncompliance situation, stating:

> [b]reaking an addiction is not a simple matter of rationally deciding to cease the addictive behavior, whether it be smoking, drinking or drug abuse. The world would obviously be a better place if that were so. In the case of nicotine addiction, a mere failure to successfully stop smoking will not support a finding of willful refusal to try. If the plaintiff was unable to stop smoking because she was addicted to nicotine, her noncompliance would not be unjustified. The burden is on the Commissioner to produce evidence of unjustified noncompliance.

> *Dawkins v. Bowen*, 848 F.2d 1211, 1214, n.8 (11th Cir. 1988). In the
> present case, the ALJ made no finding that the plaintiff was actually
> able, mentally and physically, to stop smoking. Nor did the
> Commissioner cite to any evidence, other than the plaintiff's failure to
> stop smoking, to show that her noncompliance was unjustified.

*Seals*, 308 F. Supp. 2d at 1251.

Further, the ALJ also failed to make another essential finding when discrediting

because of noncompliance with treatment. More specifically, the ALJ omitted any

determination that, had the claimant followed the prescribed treatment, the claimant's

ability to work would be restored. *Id.* Although the ALJ found that the claimant's

condition would improve if she stopped smoking, "[i]mprovement does not equal an

ability to work." *Id.* at 1251-52.

Assuming that the statements made to Ms. Grier by her treating physicians do

constitute prescribed treatment, the ALJ did not inquire whether her failure was

unjustified. Similar to the claimant in *Seals*, Ms. Grier is nicotine dependent and,

thus, because of her addiction, her inability to quit smoking does not constitute an

unjustified reason for noncompliance without any further inquiry by the ALJ. (Tr.

13); *see Seals*, 308 F. Supp. 2d at 1251("If the plaintiff was unable to stop smoking

because she was addicted to nicotine, her noncompliance would not be unjustified.

The burden is on the Commissioner to produce evidence of unjustified

noncompliance."); *see also* SSR 96-7p ("individual's statements may be less credible

21

. . . , if the medical reports or records show that the individual is not following the treatment as prescribed <u>and there are no good reasons for this failure</u>") (emphasis added).

In the present case, the ALJ did not state whether Ms. Grier was mentally and physically capable of quitting smoking, nor did the ALJ cite to any evidence, other than her failure to stop, to show that her noncompliance was unjustified.[12] Furthermore, the ALJ did not cite to any evidence that showed that, if Ms. Grier quit smoking, her condition would improve to the point in which she could be capable of performing work. While the record does show instances of Ms. Grier being warned that her condition will not improve unless she quits smoking, the court is unable to find any report that establishes that if Ms. Grier did quit, her condition would improve <u>to the point that she could work</u>. Therefore, the court finds that the ALJ's reliance on Ms. Grier's failure to quit smoking as evidence weighing against her credibility does not serve as substantial evidence supporting the ALJ's credibility determination.

**C.   <u>The ALJ improperly concluded that Ms. Grier's testimony is not credible because of the absence in the record of a treating physician's opinion stating Ms. Grier was disabled.</u>**

The ALJ made the following observation about the medical record:

---

[12]When asked about her smoking at her hearing, Ms. Grier testified that she quit smoking about a month and a half before the hearing took place. (Tr. 33). The ALJ did not inquire why she had not quit earlier.

22

> [t]he undersigned notes that as for opinion evidence, given the claimant's allegations of disabling pain symptoms, one might expect to see some indication in the treatment record of restrictions placed on the claimant by a treating physician. Yet, a review of the record does not contain any opinions from treating or examining physicians that indicate that the claimant was disabled or even had limitations greater than those determined in this decision.

(Tr. 20). This finding by the ALJ not only runs afoul of Eleventh Circuit precedent, but also misstates the evidence in the record.

The Eleventh Circuit has held that a physician's silence regarding a claimant's functional capacity does not translate into an opinion that a claimant can work. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). In *Lamb*, the Commissioner attempted to argue that because claimant's treating physicians only noted that the claimant could not return to his past work, the Commissioner's finding that the claimant could perform light work was uncontradicted. *Id.* The court rejected this argument, stating:

> [claimant's physician] opined in June of 1984 that appellant's condition and the restriction of activity necessitated by the condition was not compatible with his former employment. It is true that [claimant's physician] did not restrict appellant from light work. It is equally true that he did not recommend light work. In fact, Dr. Kane did not address the issue of any type of work but appellant's former work. <u>Such silence is equally susceptible to either inference, therefore, no inference should be taken</u>.

*Id.* (emphasis added). The ALJ in the instant case committed an error comparable to

the one described in *Lamb*.

It is plain from the ALJ's statement that he treated silence by her treating physicians regarding Ms. Grier's limitations as evidence showing that the degree of her stated limitations is not credible. This is inconsistent with the principle espoused in *Lamb*.

Furthermore, the ALJ's description of the record, specifically that "a review of the record does not contain any opinions from treating or <u>examining physicians</u> that indicate that the claimant was disabled or even had limitations greater than those determined in this decision," misstates the evidence. (Tr. 20). Ramesh Reddy, MD, performed a complete physical examination of Ms. Grier on August 2, 2011, and concluded that, in his opinion, Ms. Grier is unable to work.[13] (Tr. 286). For the reasons described above, the court finds that the ALJ's reliance on the lack of opinion evidence in an effort to discredit Ms. Grier's subjective limitations was improper and does not serve as substantial evidence supporting the ALJ's adverse credibility determination.

---

[13]The ALJ did state in his opinion that he afforded little weight to Dr. Reddy's opinion, but, for reasons which will be developed in **Part II**, the court finds that the ALJ's reasoning for placing little weight with Dr. Reddy's opinion is not supported by substantial evidence.

D.     **The ALJ incorrectly characterized the treatment received by Ms. Grier for her fibromyalgia and back pain as generally conservative and effective.**

The ALJ notes that the treatment Ms. Grier has received for her diagnosed impairments of fibromyalgia, mild degenerative disk disease of the spine, and diabetes (non-insulin dependant Type II) has been "essentially routine and conservative in nature and has been successful in controlling her symptoms." (Tr. 15-16, 19). Ms. Grier argues that the ALJ mischaracterized her treatment and that the ALJ failed to properly credit the longitudinal treatment history for her pain. (Doc. 12 at 5). The court agrees with Ms. Grier that the ALJ did not accurately described the treatment received by Ms. Grier for fibromyalgia and the ALJ also failed to credit Ms. Grier's longitudinal history of back pain.[14]

The Regulations state that relevant factors for an ALJ to consider when evaluating a claimant's pain symptoms include, "the type, dosage, effectiveness, and side effects of any medication" taken by the claimant, as well as any "[t]reatment, other than medication, [claimant] receives or ha[s] received for relief of [claimant's] pain or other symptoms[.]" 20 C.F.R. § 404.1529(c)(3)(iv)-(v). A claimant's

---

[14]The court finds that the ALJ did not necessarily mischaracterize the treatment received by Ms. Grier for her diabetes; however, as explained fully in section **E**, the ALJ's reliance upon this evidence to discredit Ms. Grier's subjective complaints of pain was improper under the circumstances of this case.

statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints[.]" SSR 96-7p; *see also Farley v. Astrue*, No. 2:08-CV-2219-VEH, (Doc. 11 at 9-12) (N.D. Ala. Dec. 2, 2009) (holding that exaggeration of pain versus treatment sought was substantial evidence for the ALJ's credibility determination). However, the ALJ

> must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, <u>or other information in the case record</u>, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

96-7p (emphasis added). In the instant case, the ALJ did not consider the obvious explanations for Ms. Grier's perceived conservative treatment for her fibromyalgia.

On February 28, 2013, Ms. Grier was examined by one of her treating physicians, William J. Shergy, MD. (Tr. 441). Dr. Shergy noted in his report that "Ms. Grier has underlying fibromyalgia, most likely secondary to severe sleep apnea. <u>She clearly will not improve from her fibromyalgia symptoms unless her sleep apnea is addressed and she begins to exercise</u>." *Id.* (emphasis added). The ALJ failed to recognize this link between her fibromyalgia and her severe sleep apnea condition.

Consequently, the treatment prescribed for Ms. Grier's sleep apnea condition also relates to managing her symptoms associated with fibromyalgia. Further, after

reviewing Ms. Grier's treatment for sleep apnea, the record lacks substantial evidence to support the ALJ's conclusion that such treatment was conservative or effective. Ms. Grier was evaluated at the Shoals Sleep Center on September 6, 2012. (Tr. 358). The study found that Ms. Grier suffered from obstructive sleep apnea syndrome. (Tr. 379). It was recommended that Ms. Grier use a continuous positive airway pressure machine (CPAP) to treat her sleep apnea; however, Ms. Grier did not have the ability pay for a CPAP initially.[15] (Tr. 349, 382). Ms. Grier did eventually obtain a CPAP machine; however, she continued to report to her physicians that the CPAP machine was not successful in controlling her symptoms.[16] Therefore, as shown above, the court finds that this evidence does not constitute substantial evidence supporting the ALJ's credibility determination because the ALJ failed to address the dependent relationship her fibromyalgia shares with her sleep apnea; and such error is not harmless because the undersigned is unable to conclude that her sleep apnea treatment is conservative, or successful in controlling her symptoms.

---

[15]While a remediable or controllable medical condition is generally not disabling, when a claimant cannot afford the prescribed treatment and can find no way to obtain it, she is excused from noncompliance. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("We agree with every circuit that has considered the issue that poverty excuses noncompliance.").

[16]On January 31, 2013, Ms. Grier visited Dr. Ridgeway because of symptoms associated with her sleep apnea condition. (Tr. 478). Dr. Ridgeway noted that Ms. Grier's sleep apnea condition has been present for several months, that she is treating the condition with a CPAP machine, and that she is completely compliant to therapy. *Id.*

Lastly, regarding Ms. Grier's mild degenerative disk disease of the spine, the ALJ again erroneously labeled her treatment received as "routine and conservative in nature and has generally been successful in controlling her symptoms." (Tr. 16). Ms. Grier argues that the ALJ failed to credit Ms. Grier's "longitudinal history for her pain and continued treatment for the same." (Doc. 12 at 5). The court agrees with Ms. Grier. SSR 96-7p, defines longitudinal history of pain as the following:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

*Id.* Ms. Grier's medical record shows that she has continuously sought medical treatment for her back pain, and the ALJ was incorrect in classifying her treatment as conservative and effective.

The record reveals that Ms. Grier has consistently been complaining of back since March of 2009. (Tr. 254). Ms. Grier returned twice that year with complaints of back pain. (Tr. 252-53). On August 5, 2010, Ms. Grier reported that her back pain

28

seemed to be getting worse. (Tr. 249). On April 18, 2012, Ms. Grier was examined at the Shoals Pain Center where she was diagnosed with lumbar radiculopathy and lumbar disc displacement. (Tr. 344-45). Following this diagnoses, Ms. Grier underwent an interlaminar lumbar steroid injection at the L5-S1 level; however, instead of getting relief, Ms. Grier reported that the injections made her feel worse. (Tr. 346, 412). She further stated that she had increased her pain medication without much relief. (Tr. 412). Because of Ms. Grier's history of continuously complaining about her back pain, while also getting little to no relief from medication, the court finds that the ALJ erred in classifying her treatment as conservative and effective. Therefore, the ALJ's observation about Ms. Grier's treatment received for her fibromyalgia and mild degenerative disc disease does not constitute substantial evidence supporting the ALJ's credibility determination.

### E.   The ALJ improperly relied upon Ms. Grier's diabetes treatment to discredit unrelated debilitating limitations.

The ALJ addressed Ms. Grier's diabetic condition by noting the following, "[r]egarding the claimant's alleged diabetes (non-insulin dependent Type II), again the undersigned notes while the claimant has undergone treatment for her alleged impairment, the treatment she has received has again been essentially routine and conservative in nature and has been successful in controlling her symptoms." (Tr. 19).

29

The ALJ is generally correct that the treatment received for Ms. Grier's diabetes has been conservative and effective; however, the court finds that the ALJ's inclusion of Ms. Grier's conservative treatment for diabetes as a factor weighing against her credibility is inappropriate under the circumstances of this case.[17]

While Ms. Grier did state in her initial disability report that her diabetic condition affected her ability to work (Tr. 166), this impairment is not the crux of her SSI claim. In fact, the court is only able to find one statement made by Ms. Grier where she alleges that her diabetic condition has had some effect on her functional abilities.[18] The insignificance of her diabetic condition to her SSI claim is underscored by (1) the disability determination document completed by the SSA which identifies organic mental disorders as Ms. Grier's primary diagnoses, and disorders of the back as her secondary diagnoses (Tr. 55); and (2) the ALJ never questioned Ms. Grier about her diabetic condition during the hearing. (Tr. 28-52).

---

[17]The ALJ included this piece of evidence after stating his broad credibility assessment that Ms. Grier's "symptoms are not entirely credible for the reasons explained in this decision." (Tr. 15). At no point does the ALJ explicitly delineate which "reasons" did, or did not, affect his view of Ms. Grier's credibility, thus the undersigned can only presume that every reason stated was considered by the ALJ.

[18]In a handwritten note by Ms. Grier, she stated that she has an appointment with an optometrist because of complications to her vision caused by her diabetic condition. (Tr. 215). While there is no document in the record from an optometrist, Dr. Reddy noted in his report that Ms. Grier did have an eye exam two months prior to his examination, and that she was prescribed glasses. (Tr. 284).

The ALJ also made no attempt to explain how evidence of routine treatment for her diabetic condition somehow makes Ms. Grier's subjective complaints caused by her other independent impairments not credible, including, in particular her mental limitations. Nonetheless, the ALJ partially and inadequately based his decision to discredit Ms. Grier's entire subjective disabling symptoms because of routine treatment she received to deal with her diabetic condition. Therefore, to the extent that Ms. Grier's diabetes treatment is appropriately characterized as conservative and successful in controlling her symptoms, such evidence does not serve as substantial evidence supporting the ALJ's entire credibility determination.[19]

### F.   The ALJ improperly discounted Ms. Grier's testimony pertaining to her daily activities.

During Ms. Grier's hearing in front of the ALJ, she testified that her impairments have a profound effect on her daily activities. She stated that she is unable to sit or stand for longer than about fifteen minutes. (Tr. 38). She testified that she is unable to walk to her mailbox without stopping. (Tr. 39). Ms. Grier testified that because of her depression and bipolar disorder and her physical pain she stays in bed 90% of the day. (Tr. 40). Ms. Grier also indicated that she does the laundry and

---

[19]Alternatively, assuming the conservative nature of Ms. Grier's diabetes treatment does serve as substantial evidence to discredit her alleged physical limitations, the case should still be remanded because, as described in section **A**, the ALJ inadequately discredited Ms. Grier's alleged limitations caused by her mental impairments.

dishes with the aid of her nephew or daughter. (Tr. 41). She stated that she only goes to the grocery store about once a month and is only able to stay in the store ten to fifteen minutes at a time. (Tr. 43). Ms. Grier indicated that she usually drives herself to the grocery store or to doctor appointments; however, she testified that when she makes the thirty-minute commute to her doctor's office she sometimes has to stop and walk around her car because of the pain. (Tr. 43-44).

The ALJ attempted to explain his reasoning for not crediting her statements about her limited daily activities, stating:

> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.

*Id.* The court finds that both factors listed by the ALJ are inadequate.

As to the first factor mentioned by the ALJ, the court is unable to find any binding authority that states testimony regarding daily activities must be objectively verified. Furthermore, if a claimant is not required to provide objective proof of pain, it follows that the claimant's testimony regarding daily activities does not need to be objectively verified either. Seemingly, the ALJ would never credit a claimant's

32

testimony about limited daily activities, unless the claimant allows some third-party to observe her daily activities for some period of time.

The ALJ's second reason for discrediting Ms. Grier's testimony about her limited daily activities is also inadequate. Regarding the "other factors" mentioned by the ALJ, the court has determined that none of the other factors mentioned by the ALJ constitute substantial evidence supporting the ALJ's credibility determination. *See supra* sections (A)-(E). The "weak medical evidence" the ALJ mentions was an erroneous finding as described in section (C) above. Lastly, the ALJ's statement that "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons" seemingly implies that the ALJ believes Ms. Grier has chosen to live her limited lifestyle. While the ALJ's theory may be correct, he did not point to adequate evidence to back up this conclusion.

For all the reasons described above, the ALJ failed to adequately support his credibility assessment of Ms. Grier. On remand, the ALJ should re-assess the effect of the claimant's testimony on her ability to work after either accepting her testimony, including her sister's corroborating statements, or by articulating adequate reasons to reject Ms. Grier's subjective pain and mental limitations.

## II.   **Alternatively And Independent Of The ALJ's Erroneous Negative Credibility Finding, The ALJ's RFC Determination Is Not Supported By Substantial Evidence.**

In determining Ms. Grier's RFC, the ALJ placed "great weight" on the mental and physical assessments prepared by state agent medical consultants who never saw Ms. Grier and only reviewed her record. (Tr. 20). The ALJ gave "little weight" to the opinions prepared by Dr. Reddy and Dr. Bentley because they "only saw the claimant on one occasion and they did not treat her, and their assessments appear to be based primarily on the claimant's subjective complaints and they are not consistent with the medical record." Ms. Grier contends that the non-examining opinions produced by the state agency consultants are "flawed and incomplete at best." (Doc. 12 at 8). The court agrees with Ms. Grier. More specifically, the court finds that the ALJ's reasons for placing more weight to the non-examining reports over the examining reports is not backed by substantial evidence.

The opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)). When the opinion of an examining physician is compared with an opinion of a non-examining physician, "[t]he opinion of an examining physician is generally entitled to more weight than the opinion of a

non-examining physician." *Broughton*, 776 F.2d at 962 (internal quotation omitted).
An ALJ may accord substantial weight to the opinion of a non-examining physician
if certain conditions are present.

An ALJ may accord substantial weight to the opinion of a non-examining
physician if the opinion is consistent with examining physician reports. *See Edwards
v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991) (finding that the ALJ did not err
in relying on the opinion of the non-examining physician since this opinion did not
contradict the opinions of the examining physicians). Reports from non-examining
sources must also be supported by other evidence in the record. *See* 20 C.F.R. §
404.1527(d)(3) ("[B]ecause nonexamining sources have no examining or treating
relationship with [the claimant], the weight will depend on the degree to which [the
physicians] provide supporting explanations for their opinions[.]"). These opinions
will be evaluated by "the degree to which these opinions consider <u>all of the pertinent
evidence in [the claimant's] claim</u>, including opinions of treating and other examining
sources." *Id.* (emphasis added).

The ALJ stated in his opinion that

[b]oth State Agency medical consultants have provided extensive
evaluations from both a physical and mental standpoint, and considering
the totality of the medical record in this case, as well as the consistency
of the findings of the State Agency medical consultants with the
objective record, the undersigned has adopted those opinions as

35

indicative of the claimant's [RFC].

(Tr. 20). The first of many flaws associated with the ALJ's analysis is his assessment that the non-examining physicians provided "extensive evaluations." Dr. Callins's physical RFC assessment of Ms. Grier was based on, at most, three treatment notes, not including Dr. Reddy's examination. (Tr. 324). Kirstin J. Bailey, Ph.D., produced the mental evaluation which the ALJ relies upon. (Tr. 299). As Ms. Grier points out in her brief, it is unclear if Dr. Bailey examined any of Ms. Grier's actual treatment records. (Doc. 12 at 8). The only report that Dr. Bailey cites in her notes section is the report produced by consultative examiner Dr. Bentley.

The second critical flaw about the ALJ's analysis is the lack of support provided by the ALJ for his determination that the non-examining physician reports were deserving of greater weight than the examining physician reports of Dr. Reddy and Dr. Bentley. The ALJ's first reason for not placing greater weight with the examining physicians' reports was because they "only saw the claimant on one occasion and they did not treat her[.]" (Tr. 20). The undersigned might have been persuaded by this observation had the ALJ not placed greater weight to reports produced by physicians who have never seen nor treated Ms. Grier.

The second justification the ALJ proffers is that "their assessments appear to be based primarily on the claimant's subjective complaints and they are not consistent

with the medical record." *Id.* Assuming this is correct, the ALJ's reliance on Dr. Bailey's non-examining report should be discounted for the same reasoning, considering her report is based solely from Dr. Bentley's report. Further, the ALJ's contention that Dr. Reddy's report is based primarily on subjective complaints is not backed by substantial evidence. Dr. Reddy reviewed the medical record provided to him by DDS and he conducted various physical tests on Ms. Grier, including a straight-leg raising test which resulted in a positive result for lumbosacral pain at thirty degrees.[20] (Tr. 284-86).

Lastly, and possibly most critically, the ALJ's RFC analysis is unsupported by substantial evidence because it is based <u>solely</u> on the reports of the non-examining physicians. *See Swindle*, 914 F.2d at 226 n.3 (explaining that the opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision."). Therefore, for the reasons discussed above, the ALJ's RFC determination is not supported by substantial evidence. This alone requires that the ALJ's decision be reversed.[21]

---

[20]A straight-leg raise is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1(D).

[21]The undersigned has rendered several other comparable decisions which address the inadequacies of the respective ALJ's RFC determinations from which the disposition of this case persuasively flow. *See, e.g.*, *Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding under similar circumstances in which the court found that the ALJ's RCF finding was not supported by substantial evidence); *Glover v. Astrue*, No. 3:09-CV-

Furthermore, because Dr. Reddy's finding is ambiguous as to whether he was referring to all work at any exertional level or only her past work,[22] the case should be remanded to allow the ALJ to seek clarification from Dr. Reddy to resolve this uncertainty. *See Rivers v. Colvin*, No. 2:12-CV-00792-VEH, (Doc. 10 at 10-13) (N.D. Ala. Aug. 2, 2013) (holding that the case should be remanded so that the ALJ could resolve an ambiguous statement in the consultative examiner's report).

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision was not supported by substantial evidence. More specifically, the ALJ inadequately discredited Ms. Grier's subjective testimony, and failed to provide a proper, medically-supported RFC. Accordingly, the decision of the Commissioner is due to be reversed and remanded. A separate order in accordance with this memorandum opinion will be entered.

---

0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same); *Johnson v. Astrue*, No. 3:08-CV-1761-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 12, 2010) (same); *Martin v. Astrue*, No. 5:09-CV-1029-VEH, (Docs. 11, 12) (N.D. Ala. Mar. 25, 2010) (same).

[22]Dr. Reddy concluded his examination report of Ms. Grier by stating, "I feel that the claimant is unable to work given her history and physical exam." (Tr. 286).

**DONE** and **ORDERED** this the 31st day of July, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge